REDMANN, Judge.
The builder-seller of a home appeals from a judgment in favor of the purchasers for $2,150 for repairing pre-existing fire damage ($1,650) and certain other items ($500), for $500 “for inconvenience, deprivations and embarrassment,” for $750 attorney fees, and for expert fees. The seller concedes that the fire damage award was within the trial judge’s authority but by this appeal disputes all other items. Plaintiffs’ answer to the appeal seeks increase in attorney fees for both trial and appeal and interest prior to judicial demand.
We amend to eliminate the $500 award for inconvenience and we add $350 attorney fees for the appeal but otherwise affirm.
We do, however, award interest from trial court judgment rather than judicial demand because the costs on which quantum was fixed were costs as of trial time rather than as of judicial demand and all evidence is that costs increased at least 15% meanwhile. And we do award to the buyers attorney fees for the appeal.
Although the builder does not dispute the award for repairing the fire damage, we discuss it because of the dispute over attorney fees. Before plaintiffs saw the house, fire damage caused by vandals had been largely repaired. Some attic rafters and plywood, however, although smoke-stained or even lightly charred, were not replaced because their damage did not affect their structural strength, they were not visible from inside or outside the house, and the cost of replacing them seemed unjustifiable to the builder. (Even the court’s own expert, a builder of homes costing $200,000 to $500,000, would not replace a scorched ceiling joist because to do so would require reconstructing and repainting the entire room below it.) It was a wholly reasonable decision by the builder, and it could be said that these rafters, in an invisible area, so slightly scorched that they remained structurally sound, do not constitute a “defect” any more than a dirty rafter would. Nevertheless the unavoidably implied representation upon the sale of a house as newly-constructed is that it is constructed of all new and undamaged materials. Thus the builder who, howsoever reasonably, elects to retain damaged materials, after the house suffers some casualty during its building, has the obligation to reveal that *414 fact to the buyer in order to avoid misrepresenting the quality of the house and consequent liability to redhibition or reduction in price under La.C.C. 2547:
A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: Of Conventional Obligations.
It may, according to the circumstances, give rise to the redhibition, or to a reduction of price, and to damages, including reasonable attorneys’ fees, in favor of the buyer.
(See also arts. 2520 and 2542.)
In fairness to defendant we note that its president instructed its sales agent to inform buyers of the fire, and we repeat that the house was not defective, either in structure or in appearance. But we must conclude that, through failure to communicate the fact of the unrepaired fire damage to the purchasers, defendant represented the house as all-new and all-undamaged. That incorrect representation supports plaintiffs’ demand for a reduction in.price and for attorney fees.
Defendant’s principal argument against attorney fees is that plaintiffs refused to allow defendant to make the repairs and were so unreasonable in their demands that settlement was impossible. But defendant did not offer, or offer to pay for, the replacement-type repair the trial court correctly concluded should be made. And, while plaintiffs’ demands may have been overstated, defendant did not show that its offer should have been accepted by plaintiffs (because the equal of the court’s award), thus saving plaintiffs the litigation expense. The same reasoning applies to the expert fees actually fixed by the trial judge (although a litigant is not entitled to the expert fees chargeable to any unsuccessful portion of its claim).
The $500 included in the trial judge’s calculation for other items in addition to the conceded fire damages is an amount between the two experts’ figures. Defendant complains that a medium-priced house should not be judged by the exacting standards of workmanship of a very-high-priced house. We can agree with that principle, but it does not prevent an award for repairing a wall that is “severely out of alignment” or “severely buckled” (as one expert reported) even if the price of the house would require tolerance of slight nonalignment or buckling. Similarly the drain spouts, improperly aimed so that water could splash against the brick veneer, cannot be refused relocation on the ground that the house is not an expensive one. The same is true of the cracked driveway, the fire-damaged closet shelf and the too-short toeboard for the bath vanity.
Finally, we agree with defendant’s argument that $500 “for inconvenience, deprivation and embarrassment” is prohibited by Ostrowe v. Darensbourg, La.1980, 377 So.2d 1201. The measure of price reduction for defects or absence of declared qualities coincides with the cost of repair or of providing the declared qualities. See Lemonier v. Coco, 1959, 237 La. 760, 112 So.2d 436. We could agree that a knowledgeable purchaser would not have agreed to reduce the price by only the cost of repair, but we believe that the cases discussed in Lemonier limit recovery to actual cost.
Amended to eliminate $500 of principal award and to make interest on that award run from July 3,1979, and to increase attorney fees by $350; costs of this appeal to be equally divided.